IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF
**SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>-v-<br><br>**FITZROY MANDERSON,**<br>Defendant. | CASE NO: 00-6065-CR<br>JUDGE: Dimi Trouleas |

NEW RULES
DEFENDANT'S MOTION FOR MODIFICATION AND
TO REDUCE HIS SENTENCE PURSUANT TO
18 U.S.C. 3582(C), 2D1.1(b)(6), AND 5C1.2
AMENDMMENT

**COMES NOW THE DEFENDANT,** FITZROY MANDERSON, Pro-se and through himself pursuant to Title 18 U.S.C. 3582(c), 2D1.1(b)(6), and 5C1.2, and respectfully moves this Court to (1) lower his offense level from 26 to 22 and reduce his sentence from 78 to 51 months in accordance with the newly recent amendment to the USSG 2D1.1(b)(6) and 5C1.2 under the Safety Valve provision promulgated by the U.S. Sentencing Commission and became effective on November 1, 2002, in which the Defendant did not receive at his sentencing because his base offense level culpability was "wrongfully overstated" without proper finding and facts by the Sentencing Court. See Exhibit (a).

(a) The Defendant states the following in support of his motion:

(1) Name and location of Court which entered the judgement of conviction?  United States District Court for the Southern   Distirct

- 1 -

of Florida, Fort Lauderdale Division.

    (2) The date of judgement of conviction was: June 14, 2002.

    (3) The length of sentence was: 78 months.

    (4) The nature of offense involved: 21 USC § 841(a)(1).

    (5) The Defendant's plea was: Not Guilty.

    (6) The kind of trial was: Jury.

    (7) Did you testify at trial? Yes.

    (8) Did you appeal from judgement of conviction? Yes.

    (9) If the Defendant did appeal, he answers as follows:

    (10) Other than a Direct Apeal from the judgement of conviction and sentence, the Defendant states here whether or not he has filed any petitions, applications, or motions with respect to this judgement in any Federal Court: No.

    (11) Did you receive any mitigating role adjustment? No.

    (12) Did you recieve any career offense adjustment? No.

    (13) Did you receive an enhanced sentence for prior offense? No.

    (14) The Defendant's Offense Level is: 26.

    (15) His Criminal History Category Points are: I.

    (16) The Defendant states here concisely every ground on which you are now eligible for the [2] points Safety Valve and 2 additional points pursuant to 2D1.1(b)(6) for meeting the criteria set forth in §5C1.2 in accordance to the holding in the Newly Rules Sentencing Guidelines amendment to the commentary USSG November 1, 2002:

    The Defendant asserts that he should be granted [2] points downward adjustment under the Safety Valve provision and [2] additional points for meeting the criteria set forth in 5C1.2 (1-5) and reduce his sentence

from 78 to 51 months as a result of the new recent amendment to the Sentencing Guidelines USSG 2D1.1(b)(6) and 5C1.2 which was promulgated by the U.S. Sentencing Commission and Congress.  This is because his Criminal History Category Point is [I], and he did not receive a downward adjustment at his sentencing because the Sentencing Court "incorrectly overstated" his adjustment for acceptance of responsibility.  However, the Newly Rules amendment to the Sentencing Guidelines USSG 2D1.1(b)(6), promulgated by U.S. Sentencing Commission and Congress November 1, 2002, held that the downward departure applies regardless of whether the Defendant is subject to a mandatory minimum sentence so long as his Criminal History Category is I, and his base offense level is 17 and greater, and he meets the criteria found in USSG 5C1.2 (1-5).

Since the Defendant's base offense level is 26 and he meets the criteria found in USSG 2D1.1(b)(6) and 5C1.2 (1-5), this Honorable Court must lower his offence level from 26 to 22 and modify his sentence from 78 to 51 months in accordance to the Newly Sentencing Guidelines amendment promulgated by the U.S. Sentencing Commission and Congress

## CONCLUSION

For the reasons stated above, the Defendant's motion pursuant to 2D1.1(b)(6), and 5C1.2 should be modified according to the New Amendment of the Sentencing Guidelines to which he may be entitled to in this proceeding.

Respecfully Submitted,

*[signature]*

Fitzroy Manderson, Pro-se
Reg. No. 55244-004
FSL Elktion, Unit G/A
P.O. Box 10
Lisbon, OH 44432

## CERTIFICATE OF SERVICE

I declare under penalty of perjury that the foregoing is true and correct and placed in the Special Mail Box at F.S.L. Elkton, Ohio 44432. Executed on this __2__ day of January, 2003.

*[signature]*
Fitzroy Manderson, Pro-se

cc: Terrence Thompson
    500 East Broward Boulevard
    Fort Lauderdale, Florida 33301-1902

EXHIBIT (A)

EXHIBIT (A)

# News

*Legislation*

## President Calls on Congress To Pass Online Child Porn Bill

President Bush Oct. 23 called on Congress to pass legislation, H.R. 4623, to prevent trafficking in child pornography and obscenity over the Internet. The bill has passed in the House but remains stalled in the Senate.

The "Child Obscenity and Pornography Prevention Act" passed the House in June by a vote of 413-8; see 71 CrL 461. The legislation was introduced in response to a Supreme Court decision, *Ashcroft v. Free Speech Coalition*, 71 CrL 81 (2002), declaring that a 1996 law that criminalized the possession of virtual child pornography was unconstitutional.

Defendants in child pornography cases now routinely seek to escape conviction by claiming there is a reasonable doubt as to whether the computer image is that of a real child. Technology has advanced to the point where it is difficult if not impossible to distinguish between a picture of a real child and virtual one generated from a computer.

Sens. Jean Carnahan (D-Mo.), who co-sponsored the Senate version of the bill, S. 2511, along with Kay Bailey Hutchison (R-Texas), said in a statement that her bill would provide that a person who distributes virtual child pornography has committed a crime, unless he can prove that real children were not used. The bill also would provide that virtual images of young children engaging in sexual acts are obscene and therefore not entitled to constitutional protection. "I join the president's call for prompt action on this legislation," Carnahan said.

Still, the president's call to pass legislation comes late in the legislative year and it is unclear whether the Senate will have time to act on the bill prior to adjourning for the year.

**More Funding.** In the meantime, the president offered another step to help stop online child pornography—an increase in funding for undercover sting operations. Under his proposal, the funding for task forces addressing Internet crimes against children would almost double from $6.5 million in fiscal year 2002 to $12.5 million in FY 2003. The additional funding would increase the number of regional task forces to 40 around the country, Bush said.

"The House passed a bill which makes it illegal for child pornographers to disseminate obscene, computer-generated images of children," Bush said. "The Senate needs to get moving and join the House in providing our prosecutors with the tools necessary to help shut down this obscenity, these crimes against children," he declared.

*Sentencing*

## Sentencing Guidelines Amendments Address Terrorism, Drugs, Career Offenders

Amendments to the U.S. Sentencing Guidelines proposed by the U.S. Sentencing Commission May 1 are poised to go into effect Nov. 1. Congress has not enacted legislation to change or disapprove the amendments. Topics addressed by the amendments include terrorism, drugs, and career offenders.

**Drugs.** An amendment to the guidelines on drug offenses
- establishes an offense-level cap of 30 for drug defendants who receive mitigating role adjustments under USSG 3B1.2,
- sets the "typical weight per unit" for MDMA or "ecstasy" pills at 250 milligrams per pill,
- raises to 26 the maximum base offense level for defendants who are sentenced under USSG 2D1.8(a)(2) for renting or managing a drug establishment without participating in the underlying drug offenses, and
- clarifies USSG 2D1.1(b)(6), which provides a two-level decrease if the defendant meets the criteria set forth in the "safety valve" guideline, USSG 5C1.2, by providing that the defendant need not be subject to a mandatory minimum sentence to get the decrease, and by declaring that the minimum offense level the safety valve imposes on certain offenders is not pertinent to the application of Section 2D1.1(b)(6).

**Terrorism.** An extensive amendment addressing terrorism
- creates a new guideline, USSG 2M5.3, to cover the crime of providing material support to terrorists and foreign terrorist organizations,
- adds an invited structured upward departure for offenses that involve terrorism but do not trigger the upward adjustment provided by USSG 3A1.4,
- assigns the new terrorism predicates created by the USA PATRIOT Act (summarized at 70 CrL 93) to appropriate provisions of Chapter 2,
- implements Section 811 of the PATRIOT Act by providing that an attempt, solicitation, or conspiracy to commit any of the offenses enumerated in that section carries the same offense level as the completed crime, rather than three levels lower as provided by USSG 2X1.1(b),
- adds specific offense characteristics to some Chapter 2 provisions,
- adds some existing terrorism crimes to the statutory index,
- references new money laundering offenses created by the PATRIOT Act to the structuring guideline, USSG 2S1.3,
- provides a two-level increase for money laundering offenses "committed . . . as part of a pattern of unlawful

```
"MDA        250 mg
 MDMA       250 mg".
```

The Commentary to §2D1.1 captioned "Application Notes" is amended by adding at the end the following:

"21.  Applicability of Subsection (b)(6).—The applicability of subsection (b)(6) shall be determined without regard to whether the defendant was convicted of an offense that subjects the defendant to a mandatory minimum term of imprisonment. Section §5C1.2(b), which provides a minimum offense level of level 17, is not pertinent to the determination of whether subsection (b)(6) applies.".

Section 2D1.8(a)(2) is amended by striking "16" and inserting "26".

The Commentary to §3B1.2 captioned "Application Notes" is amended by adding at the end the following:

"6.  Application of Role Adjustment in Certain Drug Cases.—In a case in which the court applied §2D1.1 and the defendant's base offense level under that guideline was reduced by operation of the maximum base offense level in §2D1.1(a)(3), the court also shall apply the appropriate adjustment under this guideline.".

Reason for Amendment: This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders. The amendment also clarifies the operation of certain provisions in §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy).

First, the amendment increases the maximum base offense level under subsection (a)(2) of §2D1.8 (Renting or Managing a Drug Establishment; Attempt or Conspiracy) from level 16 to level 26. This part of the amendment responds to concerns that §2D1.8 did not adequately punish defendants convicted under 21 U.S.C. § 856, pertaining to the establishment of manufacturing operations. That statute originally was enacted to target defendants who maintain, manage, or control so-called "crack houses" and more recently has been applied to defendants who facilitate drug use at commercial dance clubs, frequently called "raves".

Prior to this amendment, §2D1.8(a)(2) provided a maximum base offense level of level 16 for defendants convicted under 21 U.S.C. § 856 who had no participation in the underlying controlled substance offense other than allowing use of their premises. The Commission determined that the maximum base offense level of level 16 did not adequately reflect the culpability of offenders who permit distribution of drugs in quantities that under §2D1.1 result in offense levels higher than level 16. Such offenders

33

EXHIBIT (B)

EXHIBIT (B)

5.  Manderson had been able to board the M/V Costa Romantica by surrendering his crew pass and obtaining a visitor's pass. Manderson was attempting to depart the vessel and had exchanged the visitor's pass for his crew pass at the security area.

6.  Manderson denied running on the ship and provided a statement. Manderson stated that he was nervous boarding the ship because he was carrying money in his waist and that he came on board to see someone. He could not provide the name of the person he was going to see. When asked where he went on the ship, he paused and could not explain where and just pointed up. He admitted to being in the corridor, said no one else was there, and denied throwing anything in the trash. Manderson said "I don't know why everyone is lying on me."

7.  At the time of his arrest, Manderson had in his possession the following items: $3,767 in United States currency ($3,000 from his waist and $767 in his wallet), a Jamaican passport, a Jamaican driver's license, and a Costa Victoria identification card.

8.  According to the crime laboratory analysis report submitted by the Broward County Sheriff's Office, the total net weight of the cocaine was 662.3 grams.

### Victim Impact

9.  This is a Title 21 offense and there is no identifiable victim.

### Adjustment for Obstruction of Justice

10. The probation officer has no information to suggest that the defendant impeded or obstructed justice.

### Adjustment for Acceptance of Responsibility

11. As of the date of this report, the defendant has not provided a statement concerning his involvement in the offense.

### Offense Level Computation

12. **Base Offense Level:** The guideline for a 21 U.S.C. § 841(a)(1) offense is found in § 2D1.1 of the Guidelines Manual. The defendant is responsible for 662.3 grams of cocaine. Pursuant to § 2D1.1(c)(7), an offense involving at least 500 grams but less than two kilograms of cocaine has a base offense level of 26.  **26**

13. **Specific Offense Characteristics:** None                                    <u>0</u>

14. **Victim-Related Adjustments:** None                                           <u>0</u>

15. **Adjustment for Role in the Offense:** None                                   <u>0</u>

16. **Adjustment for Obstruction of Justice:** None                                <u>0</u>

17. **Adjusted Offense Level (subtotal):**                                         <u>26</u>

18. **Adjustment for Acceptance of Responsibility:** None                          <u>0</u>

19. **Total Offense Level:**                                                       <u>26</u>

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudication(s)

20. None

### Adult Criminal Conviction(s)

21. None

### Criminal History Computation

22. The defendant has zero criminal history points. According to the Sentencing Table (Chapter Five, Part A), zero criminal history points establish a criminal history category of I.

### Other Criminal Conduct

23. 02/20/2000 (age 41) — Trafficking in cocaine over 400 grams — Broward Sheriff's Office, Fort Lauderdale, FL — Dkt. #00-3298CF10A, 03/15/2000, no Information filed

The defendant was indicted in the Southern District of Florida as a result of the above arrest. The circumstances are outlined in the <u>Offense Conduct</u> section.

6