UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTHERN OHIO

04-60725

RECEIVED

MAY 2 7 2004

US DC CLERK'S OFFICE

NOTICE OF MOTION

CRIMINAL NO. 00-6065-CR

CIV-DIMITROULEAS

/TORRES

FITZROY MANDERSON,
PETITIONER/DEFENDANT,

-Vs.-

UNITED STATES OF AMERICA,
MARK A. BEZY, WARDEN,
PLAINTIFF/RESPONDENT.

## AFFIDAVIT OF SUPPORT HIS PETITION
## UNDER 28 U.S.C. 2255

(1)  Petitioner Fitzroy Manderson hereby states under oath and penalty of perjury pursuant to 28 U.S.C. 1746 that the below statement and fact(s) are true and correct to best of my ability.

(2)  That the Petitioner received ineffective assistance of counsel during his sentencing "when his attorney advised him not to say anything to the court because it might ruin the Appeal". This is after the Honorable Judge Dimitrouleas asked Petitioner if there is anything he wants to tell the Judge about the drug smuggling operation, or role in it, or anything else before he impose sentencing.

(3)  That the Petitioner was willing to tell the Judge about the drug smuggling and the "minor role" that he had played, but his attorney advised him not say anything.

Respectfully submitted on this _24_ day of May 2004.

FITZROY MANDERSON
REG. NO. 55244-004
F.S.L. ELKTON, UNIT G/A
P.O. BOX 10
LISBON, OHIO 44432

04-60725

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTHERN OHIO

CIV-DIMITROULEAS

|  |  |  |
|---|---|---|
| FITZROY MANDERSON, PETITIONER/DEFENDANT, | ) ) ) | **NOTICE OF MOTION** |
| -Vs.- | ) ) ) | CRIMINAL NO. 00-6065-CR      /TORRES |
| UNITED STATES OF AMERICA, MARK A. BEZY, WARDEN, PLAINTIFF/RESPONDENT. | ) ) ) ) | |

PETITIONER'S NOTICE OF MOTION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. 2241 (c) (1) and 18 u.s.c. 3585 (b)

PLEASE TAKE NOTICE, THAT THE PETITIONER FITZROY MANDERSON,

does and has hereby submitted the above, an annexed motion for this Honorable

Court to vacate, set aside, or correct the sentence, and under oath on this *24*

day of *May* , 2004, as an indigent inmate, in Forma Pauperis, pursuant to

Title 28 U.S.C. 1915. Further, the Petitioner is a Pro-Se litigant under the

Criminal Justice Act. The Petitioner alleges that [1] his Forth, Fifth, and

Sixth, and Eighth Amendment constitutional Rights were violated by his attorney;

[2] and The Warden of the Federal Institution Elkton, Ohio is holding him

illegally in prison.


JURDISDICTION

In this instant matter, the United States District Court has jurisdiction

over this petition and the issues raised herein pursuant to 28 U.S.C. 2241 (c)(1)

and 18 U.S.C. 3585 (b), which are the most effective means available to address

**(1)**

his constitutional Rights caused by his attorney:  Howard Schumacher, whom
willfully and intentionally failed to give the Petitioner the rights to legal
representation during pre-trial, trial, sentencing, and on direct appeal.
The Petitioner is hereby challenging counsel ineffective representation, and
the Warden of the Federal Institution who have been illegally holding the
Petitioner in captivaty upon expiration of his illegal sentence. The Petitioner
seeks corrective action from the Court in this mentioned matter.

### REASON FOR GRANTING THE PETITION

The reason the Petitioner is seeking a writ of Habeas Corpus under 28 U.S.C.
2241 (c) (1); 18 U.S.C. 3585 (b), and pursuant to Rule 20, are because the
Petitioner asserts that he had exhausted all of his Administrative Rremedies
in the District Court of Fort Lauderdale, Florida, and 11th Circuit Court of
Appeals in Atlanta, Georgia, and that adequate relief in this instant matter can
not be obtained in any other form or from any other Court, and therefore,
Pettitioner respectfully seeking a writ of Habeas Corpus and execution of his
sentence Pro-Se.

### STATEMENT OF SUBJECT MATTER
### AND PETITIONER JURISDICTION

**PETITIONER STATES THAT:**

Subject matter jurisdiction in this cause was vested in the United States
District Court of Fort Lauderdale, Florida upon the filing of a void indictment
on or during March 14, 2000 naming the United States of America as Plaintiff,
and Fitzroy Manderson, as the Defendant by virtue of 28 U.S.C. 1251(i) and §1651
(a) which granted original jurisdiction to the above mentioned Court and in this
Court over all offenses against the law of the United States. (See Gregory, 181
F. 3d at 714; Capaldi -v- Pontesso, 135 F. 3d 1122, 1123 (6th Cir. 1998)

(2)

## STATEMENT OF FACTS

1)   On February 20, 2000, the Petitioner was arrested by officers from the Broward County Sheriff's Department and charged with violating Title 21 U.S.C. 952 (a) and 21 U.S.C. 841 (a)(1).

   On March 14, 2000, an indictment was returned against Manderson charging him with importation of Cocaine with intent to distribute.(See Exhibit A)

2)   On June 14, 2000, the Petitioner was found guilty of possession with intent to Distribute Cocaine [DE-48].

3)   On August 25, 2000, the Petitioner was sentenced to 78 months in prison, [DE-60], The top end of the guideline range.

4)   On August 30, 2000, defense counsel filed a Notice of Appeal. [DE-62]

5)   On October 19, 2000, the Petitioner filed a Pro-Se Notice of Appeal.[DE-63]

6)   On September 11, 2001, the Eleventh Circuit Court of Appeal dismissed the appeal. [DE-82]. however, the appeal was apparently later reinstated and denied on January 15, 2002, U.S. -v- Manderson, 31 FED. Appx. 929 (11th Cir. 2002). Mandate issued on February 14, 2002. [DE-89].(See Exhibit B)

7)   On January 28, 2002, Manderson filed a Motion for Modification of Sentence, complaining that a November 1, 2001 amendment to the guidelines allowing the safety valve for Defendant's scoring between Level 17 and 26 should be retro-actively applicable to him. On February 5, 2002, the Court denied the motion since Manderson scored out to level 26, the amendment did not help him. Moreover, the Court found that the Amendment to the guidelines did not afford Defendant a second bite at the safety valve apple. Manderson's appeal of this order was dismissed on April 16, 2002, (See Exhibit C)

8)   On May 1, 2002, Manderson files a 2255 Motion to Vacate. [02-60647-CIV-Dimitrouleas].   On May 13, 2002, this Court denied the Motion, [DE-101],

finding that a request for downward departure on a minor role basis was argued and denied at sentencing. [DE-73, pp. 6-12] and that no prejudice could be shown. (See Exhibit D)

9)    On January 2, 2003, Manderson filed an 18 U.S.C. 3582 (c) Motion for Modification of his sentence according to the Amendment to the Sentencing Guidelines. The Court denied it on January 10, 2003, The Petitioner Appealed it and the Eleventh Circuit Court of Appeals affirmed it on October 30, 203, by virtue of stating that the appropriate vehicle for Manderson's ineffective assistance of counsel is a 'habeas corpus' petition, 28 U.S.C. 2255 (See Foot Note and Exhibit E)

10)    On March 12, 2004, the Petitioner filed an 28 U.S.C. 2254 (b)(2) and 28 U.S.C. 2253 petition to the Southern District Court of Florida. The Court denied it on February 9, 2004, and moves the petition to file his second successive §2254 to the Eleventh Circuit of Appeals. On March   2004, the Petitioner filed a second successive petition to Eleventh Circuit Court of Appeals.  It was denied April 23,2004,(See Exhibit F)


Respectfully Submitted

FITZROY MANDERSON Pro-Se
Reg. No. 55244-044
F.S.L. Elkton Unit G/A
P.O. Box 10
Lisbon, Ohio 44432-0010

(4)

## MEMORANDUM OF LAW IN SUPPORT OF
## APPLICATION UNDER 28 U.S.C. 2241 (c)(1) AND  18 U.S.C. 3585

**(1)**     STATEMENT OF ISSUES UNDER CONSIDERATION.

   (A)  Petitioner's Application is Properly before this Court as an
        Application under 28 U.S.C. 2241 (c)(1) and 28 U.S.C. 3585(b)

   (B)  Petitioner's sentence must be vacated, set aside, or corrected
        as the Petitioner received ineffective assistance of counsel at
        sentencing and on Direct Appeal pursuant to 5C1.2,3B1.2, and 3E1.1

   (C)  The Petitioner is entitled to an evidentiary hearing on meritorious
        issues.

**(2)**   **LAW AND ARGUMENT.**


### ISSUE ONE


**A)** The Petitioner Fitzroy Manderson, Pro-Se, pursuant to Title 28 U.S.C.

2241 (c)(1) and 18 U.S.C. 3585 (b), 5C1.2, 3B1.2,  AND 3E1.1, and respectfully

moves this Honorable Court to grant him relief and vacate, set aside, or correct

the sentence in this case because he had received ineffective assistance of

counsel at sentencing and Direct Appeal, "When his attorney, Schumacher erron-

eously advised the Petitioner not to say anything during sentencing because it

may ruin the Appeal.  This is after the Honorable Judge Dimitrouleas ask the

Petitioner if there is anything he wants to tell the Judge about the drug

smuggling operation, or his role in it , or anything else before he impose

sentence.(See sentencing Transcripts, P.10-11, Exhibit G)

Mr. Schumacher also failed to raise the above mentioned sentencing issues on Direct Appeal. Thus, this Application brought under 28 U.S.C. 2241(C) (1) and 18 U.S.C. 3585 (b) are properly before this Court, based upon the Petitioner exhausted all his remedy in his circuit.

## ISSUE TWO

PETITIONER'S SENTENCE MUST BE VACATED,
SET ASIDE, OR CORRECTED, AS THE PETITIONER
RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL
AT SENTENCING AND ON DIRECT APPEAL

As this Court is well aware the Sixth Amendment to the United States Constitution guarantees that every criminal defendant is entitled to the assistance of counsel in presenting his or her defense. "The right to counsel is a fundamental right of criminal defendants', it assures the fairness, and the legitimacy, of our adversary process." Kimmelman -v.- Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582 (1986); and Cuyler -v.- Sullivan, 466 U.S. 335, 343, 100 S.Ct. 1708, 1715, 80 L.Ed.2d 657 (1980). Futhermore, the Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." McMann -v.- Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970). The right to effective assistance of counsel at any critical stage encompasses the right to have an advocate for one's cause. Avery -v.- Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322 (1940); Estelle -v.- Smith, 451 U.S. 454, 469-71, 101 S.Ct. 1866,

( 6 )

68 L.Ed.2d 359 (1981), <u>Kirby -v- Illinois</u>, 406 U.S.682, 688-89, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), <u>Mempa -v- Rhay</u>, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967). Counsel must "subject the prosecution's case to meaningful adversarial testing." <u>United States -v- Cronic</u>, 466 U.S. 648, 659, 104 S.Ct. 20-39, 2947 (1984). The "Sixth Amendment right to counsel extends to sentencing in federal cases." <u>Mepha -v- Rhay</u>, 389 U.S. 128, 134 (1967); See <u>Hays -v- Arave</u>, 977 F.2d 475 (9th Cir. 1991) (holding the same). Courts have often recognized that one of the important functions of defense counsel at sentencing is to ensure that the defendant is sentenced on the basis of accurate information. In <u>Townsend -v- Burke</u>, 334 U.S. 736 (1948), the U.S. Supreme Court stated that "(c)ounsel would have been under a duty to prevent the court from proceeding on such false assumptions and, perhaps, under a duty to seek remedy elsewhere if they persisted." Id. at 470.

The Supreme Court established the test for determining whether a defendant has received the effective assistance of counsel in <u>Strickland -v- Washington</u>, 466 U.S. 668, 104 S.Ct. 2055 (1984). The High Court stated that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. The <u>Strickland</u> test has two components, both of which must be satisfied to establish that

defense counsel's performance was ineffective.  First, "the
defendant must show that the counsel's performance was deficient."
Id. at 687.  Second, the defendant must show that the deficient
performance prejudiced the defense.  Id.;  See also United
States -v.- ricardo, 78 F.3d 1411, 1418 n.15 (9th Cir. 1995).
A Petitioner seeking to prove ineffective assistance of counsel
"must overcome the presumption that  under the circumstances
the challenged action 'might be considered sound trial strategy".
Morris -v.- California, 966 F.2d 448, 456 (9th Cir. 1991)(quoting
Strickland);  See also Hendricks -v.- Calderon, 70 F.3d 1032
(9th Cir. 1995)(holding that whether an attorney's conduct
falls within the broad range of professionally acceptable conduct
should be determined by examining what was known and reasonable
at the time the attorney made his choices).

### 1. Counsel Rendered Ineffective Assistance at Sentencing and on Direct Appeal when he failed to Seek a Reduction in Offense Level based on the Petitioner's Safety Valve, Minor Role, and Acceptance of Responsibility in the Offense.

The Sentencing Guidelines provide for a reduction in the
offense level under §5C1.2, 3B1.2, and 3E1.1 based on a defendant's
First Offense, Minimal or Minor Role, and Acceptance of Respon-
sibility.  As a preliminary matter, the Petitioner wishes
to inform this Honorable Court that he is in no way attempting
to minimize his conduct in the instant offense.  However,
the Guidelines provide for an offense level adjustment in
stiuations like the Petitioner's, and the Petitioner contends
that his attorney was ineffective for failing to seek an

offense level reduction at sentencing, and/or Direct Appeal.

As this Court knows, Sentencing Guideline Section 2D1.1(b)(6)

and 5C1.2(1-5) states:

(a)  If the Defendant meets the criteria set forth in subdivisions (1)-(5) of 5C1.2 (Limitations on Applicability of Statutory Minimum Sentences in Certain Cases) and the offense level determined above is level 26 or greater, decrease by 2 levels.

(b)  If the Defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(c)  If Defendant was a Minor Participant in any criminal activity, decrease by 2 levels.

(d)  If the Defendant Accepted Responsibility in the criminal offense, decrease by 2 levels.

At the Petitioner's sentencing hearing, attorney did

not seek a reduced offense level based on the Petitioner's

Safety Valve, Minimal or Minor Role, and Acceptance of Responsibility

in the offense nor on Direct Appeal.  "The Defendant has the

burden of proving by a preponderance of the evidence that

he is entitled to a downward adjustment based on his role

in the offense." United States -v.- Ladum, 141 F.3d 1328,

1348 (9th Cir. 1998);  See also United States -v.- Pena-Guiterrez,

222 F.3d 1080 (9th Cir. 2000)(quoting United States -v.- Ladum

and holding the same).  Clearly, it is the duty of a Defendant's

attorney to raise the issue of a Safety Valve and Minimal

or Minor Role pursuant to §5C1.2, 3B1.2 .  A criminal Defendant,

particularly a foreign national with a very limited ability

to understand the laws and criminal procedures, cannot be

penalized for his ignorance of the United States Sentencing

Guidelines.  This is especially true where allegedly competent
counsel has been appointed to represent the Defendant.  It
was the attorney's duty to explore every possible avenue that
could result in a shorter sentence for the Petitioner, and
he clearly failed to perform that duty.  This is after the
Judge asked the Petitioner if there is anything he wants to
tell the Judge about the drug smuggling operation, or role
in it, or anything else before he imposed sentence.  (See
ST.P.10-11)(See Exhibit F)  The Petitioner's attorney erroneously
advised him that he should not say anything because it may
ruin the Appeal.  (See Petitioner's Affidavit)

The Petitioner's attorney made absolutely no attempt
to seek a Safety Valve, Minimal or Minor Role, and/or Acceptance
of Responsibility under 5C1.2, 3B1.2 and 3E1.1 reduction despite
the fact that his client was eligible for an offense level
reduction under these sections.  The Petitioner has been pre-
judiced as a result of his attorney's failures, because he
missed his only opportunity to request the above reductions
which had an excellent chance of success.  The Petitioner
submits that his attorney's failure to seek an offense level
reduction under these sections of the Guidelines amounts to
ineffective assistance of counsel, particularly when in light
of the fact that he met all the requirements for the reduction.

Accordingly, the Petitioner's counsel's actions in this
case fell below the objective standard of reasonable represen-
tation, and resulted in the affirmance of the judgement in

the Petitioner's case, thereby prejudicing him both in the
District Court and on Direct Appeal.

## C.  PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING

The Petitioner contends that, at minimum, he is entitled
to an evidentiary hearing on the matters raised in the instant
motion.   The Petitioner submits that resolution of the issues
raised will require an examination of evidence beyond the
scope of the record.   The Supreme Court has held that a Petitioner
is entitled to an Evidentiary Hearing is he alleges facts
which, if true, would warrant habeas relief.   (In habeas
proceedings, an Evidentiary Hearing is required when the Petitioner's
allegations, if porven, would establish the right to relief.);
Townsend -v.- Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756-57
(1963), overruled on other grounds by Keeney -v.- Tamayo-Reyes,
504 U.S. 1, 112 S.Ct. 1715 (1992).   When determining whether
an Evidentiary Hearing is required, a Court must accept as
true the factual assertions made by the Petitioner.

In the instant case, the Petitioner has made allegations
of ineffective assistance of counsel in violation of his Sixth
Amendment Right.   Assuming that the factual assertions are
true, and evidentiary hearing is necessary to resolve the
issues. If the allegations made by the Petitioner are proven,
he would be entitled to relief in the form of the new trial
and/or re-sentencing hearing.   The Petitioner submits that
the claims he has raised in the present Petition are not frivolous.
Also, the scope of the review necessary to resolve these issues

of ineffective assistance of counsel necessarily to beyond the record. Therefore, the Petitioner suggest that a studied examination by this Court could best occur in an evidentiary hearing. The Petitioner requests that this Court, therefore, order the Evidentiary Hearing to consider the Petitioner's claims for relief.

### III. CONCLUSION

The Petitioner respectfully requests that this Honorable Court grant him relief and vacate, set aside, or modify the sentence pursuant to U.S.S.G. 5C1.2 (1)-(5), and 3B1.2, 3E1.1 as the Petitioner was denied his Sixth Amendment right to effective assistance of counsel. In the alternative, the Petitioner requests that his appellant rights be restored, so that he can receive the effective assistance of counsel that he has been denied at sentencing and appeal. At the very minimum, the Petitioner request that the Court consider lowering his offense level in accordance with U.S.S.G. 2D1.1(b), 5C1.2, 3B1.2, and 3E1.1.

Respectfully submitted,

FITZROY MANDERSON
Reg. No. 55244-004
Pro-Se Petitioner
F.S.L. Elkton, Unit G/A
P.O. Box 10
Lisbon /OH 44432-0010

(12)

## CERTIFICATE OF SERVICE AND MAILING

I, __FITZROY MANDERSON__    HEREBY SWEAR: under penalty of perjury

pursuant to 28 U.S.C. §1746, that a true and complete copy of the foregoing

was placed this __24__ day of ___MAY___, 200__4__, in the Special Mail Box of

the F.S.L. Elkton, First Class Postage prepaid, addressed to the following:

FITZROY MANDERSON, Pro-Se
Reg. No. 55244-004
F.S.L. Elkton Unit G/A
P.O. Box 10
Lisbon, Ohio 44432


CC: Mr. Howard J. Schumacher, Esq.
    Attorney At Law
    Barnett Bank Tower
    1 East Broward Blvd., Suite 700
    Fort Lauderdale, Florida 33301

(13)

EXHIBIT   (A)

EXHIBIT   (A)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-6065-CR-DIMITROULEAS

21 USC §952(a)
21 USC §841(a)(1)
18 USC §2

MAGISTRATE JUDGE
SNOW

UNITED STATES OF AMERICA

vs.

FITZROY MANDERSON

_____/

### INDICTMENT

The Grand Jury charges that:

### COUNT I

On or about February 20, 2000, at Broward County, in the Southern District of Florida, the

defendant,

**FITZROY MANDERSON,**

did knowingly and intentionally import into the United States, from a place outside thereof, a

Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of

cocaine, in violation of Title 21, United States Code, Section 952(a), and Title 18, United States

Code, Section 2.



## COUNT II

On or about February 20, 2000, at Broward County, in the Southern District of Florida, the

defendant,

### FITZROY MANDERSON,

did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance,

that is, a mixture and substance containing a detectable amount of cocaine; in violation of Title 21,

United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

A TRUE BILL

_____
FOREPERSON


_____
THOMAS E. SCOTT
UNITED STATES ATTORNEY


_____
TERRENCE J. THOMPSON
ASSISTANT UNITED STATES ATTORNEY

-2-

EXHIBIT (B)

EXHIBIT (B)

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JAN 15 2002

THOMAS K. KAHN
CLERK
```

------------------------
No. 00-15128
Non-Argument Calendar
------------------------

D. C. Docket No. 00-06065-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FITZROY MANDERSON,

Defendant-Appellant.

------------------------
Appeal from the United States District Court
for the Southern District of Florida
------------------------

(January 15, 2002)

```
GOVERNMENT
EXHIBIT

CASE
NO. 00-6065.C

EXHIBIT
NO.        C
```

Before ANDERSON, Chief Judge, DUBINA and KRAVITCH, Circ

PER CURIAM:

Fitzroy Manderson appeals his conviction for Possession with Intent to

Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1). He argues that: (1) the

evidence was insufficient to support his conviction; (2) the district court erred by

failing to suppress an eyewitness identification that was obtained in an allegedly

suggestive manner; and (3) the district court erred by admitting videotaped depositions of government witnesses. We affirm the conviction.

Manderson, who worked as a cook on a cruise ship, was stopped while trying to exit an adjacently docked cruise ship. A security guard, who did not recognize Masterson, attempted to question him, but Masterson fled and the guards lost sight of him. A short time later, Jose Rodriguez, a member of the ship's housekeeping crew, watched an individual he later identified as Manderson remove two packages from his waist and throw them into the trash. Rodriguez notified one of the ship's officers, who contacted law enforcement. The packages, determined to contain cocaine, were recovered from the trash and Manderson subsequently was apprehended. Manderson was indicted on two drug counts and was convicted of possession with intent to distribute cocaine, in violation of 28 U.S.C. § 841(a)(1). Manderson appeals that conviction.

Manderson argues that there was insufficient evidence to support the jury's finding of guilt. This court reviews the sufficiency of the evidence de novo, drawing all reasonable inferences and credibility choices in favor of the jury's verdict. United States v. Trujillo, 146 F.3d 838, 845 (11th Cir. 1998). In this case, Rodriguez testified that he saw Manderson throw the packages containing cocaine into the trash can. Manderson argues that this identification is unreliable

2

because Rodriguez failed to mention that he knew Manderson until he later was deposed, even though they had seen each other on many occasions and previously had worked on the same cruise ship. The jury found Rodriguez to be a credible witness, however, and credibility determinations will be reversed by this court only if they are unreasonable. Id. A review of the record, including Rodriguez's testimony, reveals sufficient evidence to support the guilty verdict.

Manderson also argues that the district court erred by failing to suppress Rodriguez's identification. Manderson claims that the "show-up" identification procedure used here was impermissibly suggestive because Rodriguez was not given a line-up. Instead, Rodriguez was shown only Manderson and asked to identify if he was the man who threw the cocaine into the trash. This court has held that "show-ups are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation." Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987). The fact that Manderson was in police custody does not, by itself, make a show-up identification unnecessarily suggestive. United States v. Bautista, 23 F.3d 726, 730 (2d Cir. 1994). There is nothing in the record to indicate that authorities here aggravated the suggestiveness of the identification. Therefore, there was no error in admitting it.

Finally, Manderson contends that the district court erroneously admitted

3

videotaped depositions of key government witnesses, including Rodriguez. All three witnesses whose depositions were shown to the jury were foreign nationals working on cruise ships outside the subpoena power of the court. This situation creates a "substantial likelihood" that the witnesses were unavailable. United States v. Ramos, 45 F.3d 1519, 1523 (11th Cir. 1995). The deposition of an unavailable witness may be used at trial as substantive evidence. See Fed. R. Crim. P. 15(e). Accordingly, there was no error in admitting the depositions.

AFFIRMED.

EXHIBIT (C)

EXHIBIT (C)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                    CASE NO.  00-6065-CR-DIMITROULEAS

     Plaintiff,

vs.

FITZROY MANDERSON,

     Defendant.

_____/

FILED by _____ D.C.

FEB 0 5 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## O R D E R

THIS CAUSE having been heard upon Defendant's pro se January 28, 2002 Motion For

the Modification of Sentence, and the Court having reviewed the Court file, finds as follows:

    1.  On June 14, 2000, the Defendant was found guilty of Possession with Intent to

Distribute Cocaine. [DE-48].

    2.  On August 28, 2000, the Defendant was sentenced to 78 months in prison. [DE-60].

    3.  On August 30, 2000, defense counsel filed a Notice of Appeal. [DE-62].

    4.  On October 19, 2000, the Defendant filed a pro se Notice of Appeal. [DE-63].

    5.  On September 11, 2001, the Eleventh Circuit Court of Appeals dismissed the appeal.

[DE-82].

    6.  Any amendment to 18 U.S.C. § 3553 (f) would not have affected Defendant's sentence

in 2000.  Previous to November 1, 2001, a defendant would not qualify for the safety valve if he

scored out at less than level 26.  Since the Defendant scored level 26 at his sentencing, he was

not disqualified from safety valve consideration.[1]   This 2001 amendment does not operate to

_____

[1]All other guideline application decisions made during the original sentencing remain
intact.  U.S. v. Bravo, 203 F. 3d 778 (11th Cir. 2000).  This Court need not address whether

allow all convicted defendants another opportunity to seek the safety valve.

Wherefore, Defendant's Motion for Modification of Sentence is Denied.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this
5 day of February, 2002.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Fitzroy Manderson, #52244-004
c/o FSL/ Elkton Ohio (GA)
P.O. Box 10
Lisbon, Ohio 44432-0010

Howard Schumacher, Esquire
1 East Broward Boulevard, #700
Ft. Lauderdale, FL 33301

Terrence Thompson, AUSA

---

Manderson could have satisfied all five criteria for the safety valve, nor does this Court now
decide any issues of ineffective assistance of counsel at sentencing.

EXHIBIT (D)

EXHIBIT (D)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FITZROY MANDERSON,                     CASE NO. 02-60647-CV-DIMITROULEAS
                                                (00-6065-CR-DIMITROULEAS)
        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.
_____/

FILED by _____ D.C.

MAY 3 1 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## FINAL JUDGMENT AND ORDER DENYING MOTION TO VACATE

**THIS CAUSE** having been heard upon Petitioner's (Manderson) May 1, 2002 Motion to

Vacate [DE-1], and the Court having reviewed the court file, trial transcripts and Pre-Sentence

Investigation Report, having allowed Manderson to verify his petition [DE-4], having received a

May 30, 2002 response from the Government, and having presided over the trial of this cause,

finds as follows:

1. On March 14, 2000, an Indictment was returned against Manderson charging him with

Importation of Cocaine and Possession of Cocaine with intent to Distribute, both on February 20,

2000. [CR-DE-31].

2. On April 21, 2000, the Government requested permission to take depositions of

witnesses who were likely to be unavailable to testify at trial. [CR-DE-31].  This Court granted

that motion on April 26, 2000. [CR-DE-35].

3. On June 14, 2000, this Court denied Manderson's Motion to Suppress Identification

[CR-DE-43].

4. On June 14, 2000, approximately two weeks before <u>Apprendi v. New Jersey</u> was decided, Manderson was found guilty of Possession of Cocaine with Intent to Distribute. [CR-DE-48].

5. On August 17, 2000, Manderson withdrew his request to substitute trial counsel. [CR-DE-56].

6. On August 23, 2000, defense counsel filed objections to the PSI: minor role and <u>Apprendi</u> (as to the quantity of cocaine). [CR-DE-57].

7. On August 25, 2000, Manderson was sentenced to 78 months in prison, the top of the recommended guideline range. [CR-DE-60].

8. On February 5, 2002, this Court denied a motion to modify sentence. (safety valve) [CR-DE-86].[1]  Manderson's appeal of this issue was dismissed on April 16, 2002. [CR-DE-98].

9. On February 19, 2002, the Eleventh Circuit affirmed the Judgment and Sentence on three issues: sufficiency of evidence, suppression of identification, and the right to confrontation on videotaped depositions. [CR-DE-89].

10. In this motion to vacate, Manderson complains about

    A. Insufficient Evidence
        1. Anthony Alcock
        2. Ioscan
        3. Fingerprints

    B. Confrontation of Witnesses on Video-Taped Depositions

    C. Suggestive Identification

    D. Ineffective Assistance of Counsel

---

[1]This Court did not warn Manderson of the danger of his motion being construed as a collateral attack which could bar a later, successive motion. <u>Henderson v. U.S.</u>, 264 F. 3d 709 (7th Cir. 2001); <u>Mason v. Meyers</u>, 208 F. 3d 414 (3d Cir. 2000).

1. Failure to call witnesses
2. Lack of consultation about appellate brief, <u>Apprendi</u>, and mitigation
3. No objections to PSI
4. No downward departure requests
5. No plea bargain
6. Unco-operative on return of money

11.  The first three complaints were considered on direct appeal and need not be considered again on collateral attack.  <u>U.S. v. Sanin</u>, 252 F. 3d 79, 83 (2d Cir. 2001); <u>cert. denied</u>, 122 S. Ct. 492 (2001);  <u>U.S. v. Nyhuis</u>, 211 F. 3d 1340, 1343 (11th Cir. 2000), <u>cert. denied</u>, 121 S. Ct. 892 (2001).

12.  Mandersons complaints about counsel are conclusory and speculative.  <u>Evans v. Cockrell</u>, 285 F. 3d 370, 377 (5th Cir. 2002); <u>U.S. v. Sprouts</u>, 282 F. 3d 1037, 1041 (8th Cir. 2002).

A.  He fails to name his alibi witnesses.  Moreover, there is no showing that the witnesses were available, <u>Williamson v. Moore</u>, 221 F. 3d 1177, 1181 (11th Cir. 2000), <u>cert. denied</u>, 122 S. Ct. 234 (2001) or credible, <u>Fuller v. Attorney General</u>, 197 F. 3d 1109, 1111 (11th Cir. 1999).  Moreover, he agreed with the strategy of just introducing the passport and then resting his case. [CR-DE-72, p. 5].

B.  He fails to allege what could have been added to his appellate brief had there been consultation.  No prejudice has been shown.

C.  Defense counsel did object to the PSI. [CR-DE-57].

D.  Counsel cannot be faulted for failing to anticipate <u>Apprendi</u>[2], a change in the law.  <u>Spaziano v. Singletary</u>, 36 F. 3d 1028, 1039 (11th Cir. 1994); <u>cert. denied</u>, 115 S. Ct. 911 (1995); <u>Valenzuela v. U.S.</u>, 261 F. 3d 694, 700 (7th Cir. 2001).  Moreover, counsel did object.

---

[2]<u>Apprendi v. New Jersey</u>, 120 S. Ct. 2348 (2000).

3

[CR-DE-57]. Since, Manderson was sentenced to less than twenty (20) years in prison, no harm can be shown. U.S. v. Sanchez, 269 F. 3d 1250 (11th Cir. 2001), cert. denied, 122 S. Ct. 1327 (2002).

E. This court sentenced at the top end of the guidelines. No prejudice can be shown in that this Court would not have granted a downward departure based upon role (it was argued by counsel and denied by the Court, [CR-DE-73, pp. 6-12]); deportable alien[3]; or aberrant behavior.[4]

F. There is no indication that a plea bargain was ever offered. There is no indication that Manderson wanted to plead guilty. See, Paters v. State, 159 F. 3d 1043, 1047 (7th Cir. 1998). There is no indication that Manderson would have qualified for either acceptance of responsibility (he did not provide such a statement in the PSI, p. 5) or the safety valve (he decided not to say anything to satisfy his burden on minor role [CR-DE-73, p. 11]; therefore, there is no indication that he would have given a truthful statement.

G. There is no prejudice on the problem with the return of money, where Manderson eventually got the money.

_____

[3]Assuming the Court had discretion, U.S. v. Lopez-Salas, 266 F. 3d 842, 848 (8th Cir. 2001), the court would not have exercised that discretion. U.S. v. Sera, 267 F. 3d 872, 874 (8th Cir. 2001). No extraordinary circumstances are alleged. U.S. v. Bautista, 258 F. 3d 602, 607 (7th Cir. 2001).

[4]The aberrant behavior amendment to the guidelines under 5K2.20 became effective on November 1, 2000, after the sentencing in this case. U.S. v. Gonzalez, 281 F. 3d 38, 44 (2d Cir. 2002); U.S. v. DeWire, 271 F. 3d 333, 336 (1st Cir. 2001); U.S. v. Spinello, 265 F. 3d 150, 159-60 (3d Cir. 2001). The burden is on Manderson to prove that he would have been entitled to a downward departure. U.S. v. Constantine, 263 F. 3d 1122, 1128 (10th Cir. 2001). His allegations are insufficient to satisfy his burden. He has not alleged that his acts were spontaneous and thoughtless, U.S. v. Pickering, 178 F. 3d 1168, 1172 (11th Cir. 1999), cert. denied, 120 S. Ct. 433 (1999). Moreover, he is still maintaining his innocence.

4

Wherefore, Manderson's Motion To Vacate is **DENIED**.

The Clerk shall **DENY** any pending motions as **MOOT**.

The Clerk shall **CLOSE THIS CASE**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of May, 2002.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Fitzroy Manderson, #55244-004
c/o FSL Elkton Unit G/A
P.O. Box 10
Lisbon, Ohio 44432-0010

Terrence Thompson, AUSA

5

EXHABIT (E)

EXHABIT (E)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,              CASE NO. 00-6065-CR-DIMITROULEAS

    Plaintiff,

vs.

FITZROY MANDERSON,

    Defendant.

_____/



## O R D E R

THIS CAUSE having been heard upon Defendant's (Manderson) pro se January 2, 2003

Motion For Modification of Sentence, [DE-102] and the Court having reviewed the Pre-Sentence

Investigation Report (PSIR) and the Court file, finds as follows:

1. On June 14, 2000, the Defendant was found guilty of Possession with Intent to

Distribute Cocaine. [DE-48].

2. On August 25, 2000, the Defendant was sentenced to 78 months in prison, [DE-60],

the top end of the guidelines range.

3. On August 30, 2000, defense counsel filed a Notice of Appeal. [DE-62].

4. On October 19, 2000, the Defendant filed a pro se Notice of Appeal. [DE-63].

5. On September 11, 2001, the Eleventh Circuit Court of Appeals dismissed the appeal.

[DE-82]. However, the appeal was apparently later reinstated and denied on January 15, 2002.

U.S. v. Manderson, 31 Fed. Appx. 929 (11th Cir. 2002). Mandate issued on February 14, 2002.

[DE-89].

6. On January 28, 2002, Manderson filed a Motion For Modification of Sentence, [DE-

1

85] complaining that a November 1, 2001 amendment to the guidelines allowing the safety valve

for Defendant's scoring between Level 17 and 26 should be retroactively applicable to him. On

February 5, 2002 this Court denied the motion [DE-86] since Manderson scored out to Level 26,

the amendment did not help him. Moreover, the Court found that the amendment to the

guidelines did not afford Defendants a second bite at the safety valve apple. Manderson's appeal

of this order was dismissed on April 16, 2002 [DE-98].

7. On May 1, 2002, Manderson filed a Motion to Vacate. [02-60647-CIV-Dimitrouleas].

On May 31, 2002 this Court denied the motion, [DE-101], finding that a request for downward

departure on a minor role basis was argued and denied at sentencing. [DE-73, pp. 6-12] and that

no prejudice could be shown.

8. In this latest collateral attack, Manderson complains again about the safety valve. He

complains also that a 2002 amendment to the Guidelines should benefit him. He also complains

about no credit for acceptance of responsibility.

9. As the Court previously indicated, any guidelines amendment would not have affected

Defendant's sentence in 2000. Previous to November 1, 2001, a defendant would not qualify for

the safety valve if he scored out at less than level 26. Since the Defendant scored level 26 at his

sentencing, he was not disqualified from safety valve consideration. The 2001 amendment does

not operate to allow all convicted defendants another opportunity to seek the safety valve.

10. Contrary to Manderson's contention, the November 1, 2002 amendment to the

guideline does not operate to his benefit. On November 1, 2002, Amendment 640 to the Federal

Sentencing Guidelines went into effect, reducing the maximum base level offense to 30 for any

drug offender who played a minor role in the offense. Here, Manderson was not awarded a minor

E

rôle reduction, and his level was already below 30. Moreover, the guidelines change was substantive and not merely a clarification; it is not retroactively applicable. USSG § 1B1.11(b)(2); U.S. v. Moloney, 287 F. 3d 236, 241 (2d Cir.), cert. denied, 123 S. Ct. 416 (2002); U.S. v. King, 280 F. 3d 886, 891 (8th Cir.), cert. denied, 123 S. Ct. 402 (2002). The commentary to Amendment 640 does not state that it is intended to be a clarifying amendment. U.S. v. Descent, 292 F. 3d 703 (11th Cir. 2002), reh'g petition filed (August 23, 2002). Amendment 640 is not included in the list of amendments to be applied retroactively. USSG § 1B1.10 [c] (2002). Amendment 640 is not applicable to persons sentenced prior to November 1, 2002. Even if the amendment were to be given retroactive application, this Court would have to consider the factors listed in 18 U.S.C. § 3553(a) in deciding whether or not to reduce the defendant's original sentence. U.S. v. Bravo, 203 F. 3d 778, 781 (11th Cir.), cert. denied, 121 S. Ct. 486 (2000). No reduction would be appropriate. Manderson has not established that he otherwise would have qualified for the safety valve. For example, when the court asked Manderson at sentencing if there was anything that he wanted to tell the court about the drug smuggling operation including his role in it, Manderson replied that he wouldn't say anything. [DE-73, pp. 10-11].

11. Moreover, it is a rare occasion for a defendant to be awarded acceptance of responsibility after going to trial.

12. Matters which could have been raised on appeal (safety valve, role, acceptance of responsibility) should not again be heard on collateral attack. U.S. v. Ross, 279 F. 3d 600 (8th Cir. 2002).

13. This is, in effect, a successive collateral attack; permission to file such a motion must be approved by the 11th Circuit Court of Appeal.

3

*E*

Wherefore, Defendant's Motion for Modification of Sentence is Denied.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this

_10_ day of January, 2003

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Fitzroy Manderson, #52244-004
c/o FSL/ Elkton Ohio (GA)
P.O. Box 10
Lisbon, Ohio 44432-0010

Howard Schumacher, Esquire
1 East Broward Boulevard, #700
Ft. Lauderdale, FL 33301

Terrence Thompson, AUSA

4

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

OCT 30 2003

THOMAS K. KAHN
CLERK

———————————

No. 03-10817
Non-Argument Calendar

———————————

D. C. Docket No. 00-06065-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FITZROY MANDERSON,

Defendant-Appellant.

———————————

Appeal from the United States District Court
for the Southern District of Florida

———————————

(October 30, 2003)

Before TJOFLAT, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Federal prisoner Fitzroy Manderson appeals *pro se* the district court's denial of his 18 U.S.C. § 3582(c)(2) motion for a sentence reduction. Manderson contends the district court abused its discretion when it refused to apply amendment 640 retroactively.[1] This argument lacks merit. We affirm.

This Court reviews a district court's decision to grant or deny a sentence reduction under 18 U.S.C. § 3582(c)(2) for abuse of discretion. *United States v. Brown*, 332 F.3d 1341, 1343 (11th Cir. 2003). Section 3582(c)(2) provides that a district court may reduce a sentence upon a subsequently enacted sentencing guidelines amendment "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The applicable policy statement provides that district courts are only authorized to give retroactive effect to those amendments specified in U.S.S.G. § 1B1.10(c). U.S.S.G. § 1B1.10(a) ("If none of the amendments listed in subsection (c) is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement and thus is not authorized.").

---

[1] Manderson also contends that his counsel was constitutionally ineffective. However, Manderson failed to raise this claim before the district court. Consequently, it is beyond the scope of this appeal. *See United States v. Pope*, 58 F.3d 1567, 1569 n.6 (11th Cir. 1995) (confining appellate inquiry to "the sole issue considered by the district court"). Moreover, Manderson could not have raised this issue in a § 3582(c)(2) motion. The appropriate vehicle for Manderson's ineffective counsel claim is a habeas corpus petition. 28 U.S.C. § 2255.

Section 1B1.10(c) does not specify amendment 640 as a retroactive amendment.  U.S.S.G. § 1B1.10(c).  Consequently, the district court was not authorized to reduce Manderson's sentence.  *See United States v. Rodriguez-Diaz*, 19 F.3d 1340, 1341 (11th Cir. 1994) (refusing to give retroactive effect to an amendment that was not specified in U.S.S.G. § 1B1.10(c) "because to do so would be inconsistent with the policy statement outlined in 1B1.10(a)").  The district court did not abuse its discretion.

AFFIRMED.

3

EXHIBIT (F)

EXHIBIT (F)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

　　　　Plaintiff,

vs.

FITZROY MANDERSON,

　　　　Defendant.
_____/

CASE NO. 04-60168-CIV-DIMITROULEAS
(00-6065-CR-DIMITROULEAS)



FILED by _____ D.C.

FEB 9 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## FINAL JUDGMENT AND ORDER DISMISSING MOTION TO VACATE

THIS CAUSE having been heard upon Defendant's (Manderson) pro se January 20, 2004

Second Motion to Vacate [DE-1] and the Court having reviewed the Pre-Sentence Investigation

Report (PSIR) and the Court file, finds as follows:

1. On June 14, 2000, the Defendant was found guilty of Possession with Intent to

Distribute Cocaine. [CR-DE-48].

2. On August 25, 2000, the Defendant was sentenced to 78 months in prison. [CR-DE-

60], the top end of the guideline range.

3. On August 30, 2000, defense counsel filed a Notice of Appeal. [CR-DE-62].

4. On October 19, 2000, the Defendant filed a pro se Notice of Appeal [CR-DE-63].

5. On September 11, 2001, the Eleventh Circuit Court of Appeals dismissed the appeal.

[CR-DE-82]. However, the appeal was apparently later reinstated and denied on January 15,

2002. U.S. v. Manderson, 31 Fed. Appx. 929 (11th Cir. 2002). Mandate issued on February 14,

2002. [CR-DE-89]. Manderson's conviction became final on April 16, 2002. Bond v. Moore,

309 F. 3d 770, 774 (11th Cir. 2002).

1



6. On January 28, 2002, Manderson filed a Motion For Modification of Sentence [CR-DE-85] complaining that a November 1, 2001 amendment to the guidelines allowing the safety valve for Defendant's scoring between Level 17 and 26 should be retroactively applicable to him. On February 5, 2002, this Court denied the motion. [CR-DE-86] since Manderson scored out to Level 26, the amendment did not help him. Moreover, the Court found that the amendment to the guidelines did not afford Defendants a second bite at the safety valve apple. Manderson's appeal of this order was dismissed on April 16, 2002. [CR-DE-98].

7. On May 1, 2002, Manderson filed a Motion to Vacate. [02-60647-CIV-Dimitrouleas]. On May 31, 2002 this Court denied the motion, [CR-DE-101], finding that a request for downward departure on a minor role basis had been argued and denied at sentencing, [CR-DE-73, pp. 6-12] and that no prejudice could be shown.

8. On January 2, 2003, Manderson filed a Motion for Modification of Sentencing complaining again about the safety valve. [CR-DE-103]. He complained also that a 2002 amendment to the Guidelines should benefit him. He also complained about no credit for acceptance of responsibility. On January 10, 2003, this Court denied the motion. [CR-DE-103]. On October 30, 2003, the Eleventh Circuit Court of Appeals affirmed. [CR-DE-114].

9. In this latest collateral attack, Manderson complains about ineffective assistance of counsel. He complains that the lawyer told him not to talk at sentencing.

10. However, the record reflects that Manderson made his own decision not to allocute at sentencing. (See page 11 of August 25, 2000 transcript). Moreover, the Court already has found that a minor role was not appropriate. [CR-DE-101]. Manderson has not proffered how his testimony could have changed that ruling.

2

11. This is, in effect, a successive collateral attack; permission to file such a motion must be approved by the 11th Circuit Court of Appeal. This petition is also time-barred.

Wherefore, Defendant's Motion to Vacate is Dismissed. Manderson may now petition the Eleventh Circuit Court of Appeals for permission to file a successive petition.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this _9_ day of February, 2004.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Fitzroy Manderson, #52244-004
c/o FSL/Elkton Ohio (GA)
PO Box 10
Lisbon, Ohio 44432-0010

Terrence Thompson, AUSA

3

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT



NO. 04-11732-B

IN RE: FITZROY MANDERSON,

Petitioner.

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255

Before   **TJOFLAT, BLACK and PRYOR, Circuit Judges.**

B Y T H E  P A N E L:

Pursuant to 28 U.S.C. §§ 2255 and 2244(b)(3)(A), as amended by §§ 105 and 106 of the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Manderson has filed an application

seeking an order authorizing the district court to consider a second or successive motion to vacate,

set aside, or correct his federal sentence, 28 U.S.C. § 2255. Such authorization may be granted only

if this Court certifies that the second or successive motion contains a claim involving:

> (1) newly discovered evidence that, if proven and viewed in light of the
> evidence as a whole, would be sufficient to establish by clear and convincing evidence
> that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral
> review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255. "The court of appeals may authorize the filing of a second or successive

application only if it determines that the application makes a <u>prima facie</u> showing that the application

satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C).

In his application, Manderson indicates that he wishes to raise the following claim in a second or successive § 2255 motion: that he received ineffective assistance of counsel at sentencing and on direct appeal. Manderson asserts that his claim relies upon a new rule of constitutional law set forth in Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), which provided that an ineffective-assistance-of-counsel claim raised for the first time in an initial § 2255 motion was not procedurally barred. However, the U.S. Supreme Court specifically found that the procedural default rule was not a constitutional rule. Massaro, 538 U.S. at ___, 123 S.Ct. at 1693. Thus, a change in that rule is not a new rule of constitutional law within the meaning of the statute barring successive motions. See In re Blackshire, 98 F.3d 1293, 1294 (11th Cir. 1996) (holding that a new interpretation of a criminal statute is not a new rule of constitutional law sufficient to grant authorization to file a second or successive habeas petition).

Accordingly, because Manderson has failed to make a prima facie showing of the existence of either of the grounds set forth in 28 U.S.C. § 2255, his application for leave to file a second or successive motion is hereby DENIED.

EXHIBIT  (G)

EXHIBIT  (G)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

UNITED STATES OF AMERICA,⠀⠀⠀)⠀CASE NO.⠀00-6065-CR-WPD
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀-v-⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
FITZROY MANDERSON,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀Fort Lauderdale, Florida
⠀⠀⠀⠀⠀⠀⠀Defendant.⠀⠀⠀)⠀August 25, 2000
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀11:03 a.m.

TRANSCRIPT OF SENTENCE

BEFORE THE HONORABLE WILLIAM P. DIMITROULEAS

U.S. DISTRICT JUDGE

APPEARANCES:

For the Plaintiff⠀⠀⠀⠀⠀⠀TERRENCE J. THOMPSON, ESQ.
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Assistant U.S. Attorney
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀500 E. Broward Boulevard
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Suite 700
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Fort Lauderdale, Florida 33394

For the Defendant⠀⠀⠀⠀⠀⠀HOWARD J. SCHUMACHER, ESQ.
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀One East Broward Boulevard
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Suite 700
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Fort Lauderdale, Florida  33301

Reporter⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ROBERT A. RYCKOFF
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Official Court Reporter
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀299 East Broward Boulevard
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Fort Lauderdale, Florida  33301
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀954-769-5657

2

1    (Call to order of the Court.)

2         THE COURT:  Please be seated.

3         United States versus Fitzroy Manderson.

4         If counsel would announce their appearances for the

5    record.

6         MR. THOMPSON:  Good morning, Your Honor.

7         Terry Thompson on behalf of the United States.

8         MR. SCHUMACHER:  Good morning, Your Honor.

9         May it please the Court, Howard Schumacher on behalf

10   of Mr. Manderson seated to my right.

11        THE COURT:  And Mr. Manderson is present?

12        MR. SCHUMACHER:  He is.

13        THE COURT:  Mr. Manderson is before the Court having

14   been found guilty by a jury of possession with intent to

15   distribute cocaine.  I adjudicated him guilty, deferred

16   sentencing, ordered a Presentence Investigation Report that I

17   have received and reviewed.

18        Have counsel had an opportunity to review the

19   Presentence Investigation Report?

20        Mr. Thompson?

21        MR. THOMPSON:  Yes, Your Honor.

22        THE COURT:  Mr. Schumacher?

23        MR. SCHUMACHER:  Yes, Your Honor.  And I have

24   reviewed it in its entirety with Mr. Manderson.

25        THE COURT:  Mr. Manderson, have you read the

1    Presentence Investigation Report and discussed it with your

2    lawyer?

3              THE DEFENDANT:  Yes.

4              THE COURT:  There was an unopposed motion to file

5    objections to the PSI out of time.

6              I assume there is no objection to that,

7    Mr. Thompson?

8              MR. THOMPSON:  No, Your Honor.

9              THE COURT:  So I will grant that motion.

10             And there are two issues.  One is Mr. Manderson's

11   role in the offense and the other is the Apprendi opinion.

12             Any objection to the Presentence Investigation, other

13   than those two, Mr. Schumacher?

14             MR. SCHUMACHER:  Judge, other than the correction --

15   there was a factual objection on the arrest date, which is not

16   bearing upon this for purposes of sentencing.  So, no.  Other

17   than those two legal issues, those are the sum total, Your

18   Honor.

19             THE COURT:  All right.  Do you want to make your

20   Apprendi argument?

21             MR. SCHUMACHER:  Judge, essentially the Apprendi

22   argument is made simply for purposes of preserving the issue

23   for appellate purposes.  I think that based upon a reading of

24   Apprendi -- I don't know if it has a bearing on minimum

25   mandatories -- but based upon some of the course materials that

1   were provided to CJA counsel from the Federal Public Defender's

2   Office, there was a suggestion made an argument could, in fact,

3   be made.

4           Based upon the total amount of cocaine, Mr. Manderson

5   scores in excess of the statutory mandatory minimum.  So to the

6   extent that he is scoring in excess of that, I don't believe

7   there is anything further to articulate, Your Honor.

8           THE COURT:  I don't think there is any question about

9   the amount of drugs, that being 662.3 grams, right?

10          MR. SCHUMACHER:  Correct.

11          THE COURT:  All right.

12          I think you have an argument under Apprendi, and I

13  think only time is going to tell how it's going to shake out.

14          MR. SCHUMACHER:  Outside of the fact that it's not

15  mentioned by amount in the Indictment, that's the only

16  application I can see at this point in time, Your Honor.

17          THE COURT:  I think the Apprendi opinion certainly

18  would be applicable if Mr. Manderson was facing more than 20

19  years in prison.

20          The way the Indictment was charged, an argument could

21  be made that the maximum penalty under the statute would be 20

22  years in prison and no mandatory minimum.

23          And obviously the Apprendi case was decided after we

24  tried this case.  So Mr. Schumacher didn't have the benefit of

25  the Apprendi opinion.

1        And, quite frankly, had Justice Thomas not

2  flip-flopped his vote, we wouldn't be here today discussing

3  this.

4        But I think Apprendi stands for the proposition that

5  if there is going to be an enhancement that's going to enhance

6  the statutory maximum, then it has to be charged in the

7  Indictment and proven beyond a reasonable doubt at trial.  And

8  I don't think Mr. Manderson is facing more than 20 years in

9  prison in this case.

10       The fact that he has a five-year mandatory minimum, I

11  don't know that that is particularly relevant in the case,

12  particularly if he scores higher under the guidelines than five

13  years anyway.

14       The McMillan (phonetic) versus Pennsylvania case is

15  still good law, and I think that that, along with there is an

16  Eighth Circuit case that came out recently on a fellow who was

17  convicted of methaqualone, possession with intent to

18  distribute, and the Indictment was similar to the Indictment in

19  this case.  The only difference was that the fellow had a prior

20  conviction so that he was facing a minimum of 20 years and a

21  maximum of 30 years.  And the Apprendi opinion excludes

22  enhancement based on prior convictions, and consequently the

23  Eighth Circuit held that since he didn't get more than the

24  30-year maximum, then Apprendi wasn't violated.

25       And unless I were to give Mr. Manderson more than 20

1   years here today, I don't think Apprendi is going to be

2   violated, and consequently the objection is overruled.

3           Your argument on role in the offense?

4           MR. SCHUMACHER:   Judge, as it relates to a minor role

5   adjustment, I would point out to the Court, Judge, that there

6   was testimony at the time of trial through a BSO detective who

7   had taken the stand, as well as the lead agent in this case, to

8   indicate that apparently Mr. Manderson was acting at least in

9   the same capacity as Mr. Alcock, who was charged on the same

10  date and time under similar circumstances on board the same

11  motor vessel.

12          Testimony came out -- not by Mr. Manderson, but,

13  rather, through Mr. Alcock -- that he was instructed to -- he

14  was paid and instructed to take the cocaine off the vessel.  As

15  such, there are unindicted coconspirators and/or unindicted

16  principals to this case, including the owners of the cocaine,

17  those people that were going to then take the cocaine from the

18  distribution point off the ship and distribute it.

19          Mr. Manderson's role, there is no evidence to suggest

20  that it is other than an isolated incident for which he was

21  paid and for which he was actually delivering cocaine from the

22  vessel to a point in the port.

23          As such, Judge, his overall role and culpability in

24  the offense is relatively minor.  It is certainly one which is

25  analogous to the application note, which I have cited in my

1    objections as far as someone who is brought on to unload a

2    particular shipment of marijuana.  It's a relatively small

3    amount, although it's -- that could be argued, depending on

4    which side of the fence you are on, but 600 grams, based upon

5    U.S. District Court standards, is not a great deal of cocaine.

6            Based upon that, I think that a minor role reduction

7    would be appropriate just based upon the overall role in the

8    offense and the knowledge that would have been necessary on

9    behalf of Mr. Manderson's behalf to get the cocaine from point

10   A to point B as was suggested by the evidence in the case.

11           THE COURT:  Let me just say that guidelines 3B1.2,

12   mitigating role, allows a four-level reduction for one who is a

13   minimal participant, and they give some examples of minimal

14   participants in the application notes.

15           Specifically note 2 indicates that someone who played

16   no other role in a very large drug smuggling operation than to

17   off-load part of a single marijuana shipment would qualify.

18   But we don't have that here.

19           I mean, it makes sense that if someone is just taking

20   a couple of bales off of a freighter and they get stuck with

21   relevant conduct of the whole amount of drugs on the freighter,

22   that they ought to get some slack in their sentencing.  They

23   shouldn't be treated the same as a person who brought the

24   freighter into port and owned all the drugs.  So that makes

25   sense that a minimal participant would apply to that

1  situation.

2      The other situation would be someone who was

3  recruited a for a single smuggling transaction involving a

4  small amount of drugs.

5      I don't think 600 some odd grams of cocaine is a

6  small amount of drugs.  When I was a state court Judge, that

7  would be 50 percent more drugs that was necessary for a 15-year

8  mandatory minimum.  In the scheme of things, it may not be a

9  lot of drugs in Federal Court, but it seems like an awful lot

10  of drugs to me, and I don't think that minimal participant is

11  appropriate.

12      So then we are to look at whether or not the role was

13  that of a minor participant or something in between minor and

14  minimal.  A minor participant would warrant a two-level

15  reduction.  Something in between minor and minimal would

16  warrant a three-level reduction.

17      In some circuits I don't think Mr. Manderson would

18  even be considered for the two-level reduction.

19      In United States versus Isienyi, I-s-i-e-n-y-i, at

20  207 F.3d 390, a Seventh Circuit opinion from this year, the

21  Seventh Circuit said that when a drug courier is held

22  accountable for only the amount he carries -- and that's the

23  case here with Mr. Manderson -- he is not being held

24  accountable for drugs that somebody else took off the boat --

25  then in that situation that drug courier plays a significant,

1    rather than a minor role, and is, therefore, not entitled to a

2    mitigating role reduction.

3              So in the Seventh Circuit he wouldn't be qualified.

4              But the DeVaron case in the Eleventh Circuit gives

5    this Court the discretion to consider a courier for a minor

6    role.

7              United States versus DeVaron is at 175 F.3d 930.

8    Again, it's an Eleventh Circuit opinion from May of '99.

9              The burden is on the defense to establish the

10   entitlement to the minor role reduction and some relevant

11   factual considerations for the Court include the amount of

12   drugs, the fair market value of the drugs, the amount of money

13   to be paid to the courier, the equity interest in the drugs,

14   the role in planning the criminal scheme and the role in the

15   distribution.

16             Do you have anything you want to say about those

17   factual considerations, Mr. Schumacher, or Mr. Manderson?

18             MR. SCHUMACHER:  Judge, other than what I

19   articulated, the fact that there was no evidence suggesting

20   that Mr. Manderson had previously been used for a similar type

21   of operation, and that according to the evidence -- the only

22   evidence suggested by way of inference as to what he was

23   instructed to do, that of Mr. Alcock being instructed to carry

24   it from the ship itself into a meeting with someone in the

25   parking lot area, there was no additional evidence to suggest

1  that as far as his overall knowledge and scope of the

2  distribution of the drugs, that he was cued into that at all,

3  Judge.

4          And as far as culpable knowledge is concerned, I

5  think that that's something that the Court can consider in

6  terms of fashioning the two-level reduction.

7          THE COURT:  Mr. Manderson, anything you want to tell

8  me about this drug smuggling operation, your role in it or

9  anything else before I impose sentence?

10          MR. SCHUMACHER:  Judge, could I just have one minute

11  with him?

12          THE COURT:  Sure.

13          (Pause.)

14          MR. THOMPSON:  Your Honor, before the Court imposes

15  sentence, I wanted to correct one statement by Mr. Schumacher

16  concerning Mr. Alcock.

17          It's the position of the United States that although

18  arrested on the same day coming off the same boat, we have no

19  known connection between the two.  Mr. Alcock has cooperated

20  with authorities, named everyone that he knew that was involved

21  on the ship and did not even know this defendant.

22          Further, this defendant has not been held responsible

23  for the additional four plus pounds of cocaine that Mr. Alcock

24  was carrying, which would have bumped him up two more levels

25  minimum.

1    MR. SCHUMACHER:  Judge, upon my advice to an extent,

2  Judge, Mr. Manderson -- and you can make inquiry of him

3  yourself, Judge -- but he has indicated that he doesn't want to

4  make a statement.

5    THE COURT:  You don't have to say anything, Mr.

6  Manderson.  If you said something, I would consider it in your

7  trying to satisfy your burden of establishing a minor role, but

8  you don't have to say anything.  It's up to you.  It's your

9  decision.  Your lawyer gives you advice, but it's your

10  decision.  So whatever you want to say.

11    THE DEFENDANT:  I won't say anything, Your Honor.

12    THE COURT:  Okay.

13    Any legal cause to show why sentence should not be

14  imposed?

15    MR. SCHUMACHER:  No legal cause, Your Honor.

16    THE COURT:  Anything further before I impose

17  sentence?

18    MR. THOMPSON:  Your Honor, the only thing I would add

19  with regard to Apprendi, in this case the defendant is facing

20  far below a 20-year sentence.  The only other effect it could

21  possibly have would be on the fine, which the defendant is not

22  being ordered to pay, but the other thing would be supervised

23  release, which I think would be 3 years with a 20-year maximum.

24    THE COURT:  Let me just say that Eighth Circuit

25  opinion that I was referring to before is United States versus

1  Aguayo-Delgado.  That's A-g-u-a-y-o hyphen D-e-l-g-a-d-o.  It's

2  an Eighth Circuit opinion from July of this year, and you can

3  find it at 2000 Westlaw 988128.  And in that case they are

4  saying that they are limiting Apprendi to cases that do not

5  involve the imposition of a sentence more severe than the

6  statutory maximum for the offense established by the jury's

7  verdict, which would be 20 years in this case.

8           Anything further before I impose sentence?

9           MR. SCHUMACHER:  Judge, as it relates to matters of

10  allocution, Judge, I would ask the Court to consider the

11  following as it relates to sentencing wherein the guideline

12  range --

13           THE COURT:  Let's talk about the range, if we could.

14           I am going to find that under DeVaron you didn't

15  satisfy the burden of showing a minor role on Mr. Manderson.

16  So I am overruling your objection, which gives us a total

17  offense level of 28, a criminal history category of 1.

18           Is that correct?

19           MR. THOMPSON:  26, Your Honor.

20           MR. SCHUMACHER:  26.

21           THE COURT:  26.

22           I am looking at the thing, and it says 26, and I am

23  saying 28.  I apologize.

24           So it's a level 26, criminal history category 1, is

25  that correct?

```
 1            MR. SCHUMACHER:  Yes, Your Honor.

 2            THE COURT:  Which would be a range of 63 to 78

 3   months, is that correct?

 4            MR. SCHUMACHER:  Yes, Your Honor.  We would agree to

 5   that.

 6            THE COURT:  Which, I guess, is more than the

 7   mandatory minimum anyway.

 8            Go ahead.

 9            MR. SCHUMACHER:  Judge, I would point out to the

10   Court, Judge, that as it relates to Mr. Manderson's work

11   history, as it relates to things, when he came to the United

12   States, he has been working lawfully from 1989 until the time

13   of his arrest.  During that time he has been employed on

14   various ships, whether it was gambling ships or cruise ships,

15   working in the same capacity or similar capacity that he was on

16   at the time of his arrest.

17            There is no reason to suggest that his conduct in

18   connection with this case is anything more than an isolated

19   incident that he was brought into for purposes of presumably

20   the allure of whatever monies were offered to him or paid to

21   him at that time, Judge.

22            Based upon that I certainly think that the Court

23   should consider sentencing Mr. Manderson within the guidelines

24   and certainly toward the lower end of the guidelines as it

25   relates to that, Your Honor.
```

1    He also has a -- I know the Court has read the

2    Presentence Investigation.  He does have a wife and children

3    awaiting him back in Jamaica upon his release from prison here

4    in the United States.

5    THE COURT:  Anything else you want to say,

6    Mr. Manderson, before I impose sentence?

7    THE DEFENDANT:  No, Your Honor.

8    THE COURT:  All right.  I noticed in the Presentence

9    Investigation Report that Mr. Manderson was arrested for

10    shoplifting in Sunrise, and it didn't appear that a capias was

11    issued, but that didn't impact his sentencing because there was

12    no conviction.

13    It will be the judgment of the Court and sentence of

14    law that Mr. Manderson be sentenced to 78 months in prison.

15    Upon his release from prison I place him on three

16    years of supervised release.  While on supervised release he

17    shall not commit any crimes; he shall be prohibited from

18    possessing a firearm or other dangerous device; he shall not

19    possess any controlled substances.

20    I find that he is not able to pay a fine.  Therefore,

21    I waive the fine.

22    I impose a $100 special assessment.

23    As a special condition of supervised release, if he

24    is deported, he shall not reenter the United States without the

25    express permission of the Attorney General.  If he should

```
 1   reenter the United States during the period of his supervised

 2   release, he is to report to the nearest Probation Office within

 3   72 hours of his arrival.  And if he is outside the United

 4   States, the supervised release shall be non-reporting.

 5         Mr. Manderson, it's my duty to inform you that you

 6   have ten days within which to appeal the judgment and sentence

 7   of this Court.  Should you desire to appeal and be without

 8   funds with which to prosecute an appeal, an attorney will be

 9   appointed to represent you in connection with that appeal.

10   Should you fail to appeal within that ten-day period, it will

11   constitute a waiver of your right to appeal.

12         Also, it's my duty to elicit from counsel for all

13   parties fully articulated objections to the Court's findings of

14   fact and conclusions of law as announced at this sentencing

15   hearing, and to further elicit any objections which any party

16   may have to the manner in which the sentence was imposed in

17   this case.

18         Are there any objections from the Government?

19         MR. THOMPSON:  No, Your Honor.

20         I believe that the supervised release range would be

21   four to five years if -- for disregarding Apprendi for purposes

22   of this hearing.

23         THE COURT:  On a Class C felony can you go up to five

24   years of supervised release?  Because if you disregard

25   Apprendi, doesn't this make this a Class C felony?
```

16

1      MR. THOMPSON:  If we take Apprendi into account, yes,

2  Your Honor, then it would be three years maximum.

3      THE COURT:  Do you want to make that an issue for the

4  appeal on someone who is probably going to get deported?

5      MR. THOMPSON:  Three years is fine.

6      THE COURT:  Any objection, Mr. Schumacher?

7      MR. SCHUMACHER:  No.

8      THE COURT:  The Marshal will execute the sentence of

9  the Court.

10     Good luck to you, Mr. Manderson.

11     MR. SCHUMACHER:  Thank you, Judge.

12     (Proceedings concluded at 11:23 a.m.)

13

14                   REPORTER'S CERTIFICATION

15

16     I hereby certify that the foregoing is a true and accurate

17  transcript of the proceedings recorded by me and reduced to

18  typewriting at my direction.

19

20

21                             Court Reporter

22                             Robert Ryckoff

23

24                             Date:

25